■ NOBLE DREW ALI PLAZA TENANTS ASSOCIATION, Respondent, v NOBLE DREW ALI PLAZA HOUSING CORP. et al., Appellants, et al., Defendants. [815 NYS2d 116]—

In an action, inter alia, for a judgment declaring that the use of certain residential apartments owned by the defendant Noble Drew Ali Plaza Housing Corp. as a Tier II homeless shelter violates a restriction in the deed to the subject property and certain provisions of the Rent Stabilization Code, the defendants Noble Drew Ali Plaza Housing Corp. and Abdur Rahman Farrakhan appeal, as limited by their brief, from so much of an order of the Supreme Court, Kings County (Rosenberg, J.), dated June 24, 2004, as denied that branch of their motion which was to modify so much of a preliminary injunction as enjoined them from evicting tenants or, in the alternative, to increase the amount of the undertaking posted by the plaintiff as a condition of the preliminary injunction. Justice Adams has been substituted for former Justice Sondra Miller (see 22 NYCRR 670.1 [c]).

Ordered that the order is reversed insofar as appealed from, on the law, with costs, and the matter is remitted to the Supreme Court, Kings County, for a hearing and a new determination consistent herewith.

The instant appeal arises from a protracted dispute between the plaintiff, Noble Drew Ali Plaza Tenants Association (herein-

after the tenants), and the defendants Noble Drew Ali Plaza Housing Corp. and Abdur Rahman Farrakhan (hereinafter collectively the landlord) over a series of acts by the landlord allegedly intended to replace rent-stabilized residential tenants from the Noble Drew Ali Plaza development with homeless individuals and families for which the landlord receives greater remuneration from the City of New York. By order dated March 7, 2003, the Supreme Court granted the tenants' motion for a preliminary injunction, in effect, enjoining the landlord from renting apartments to other than rent-stabilized tenants. That injunction further enjoined the landlord from commencing proceedings, inter alia, to evict present tenants. The landlord contends that this injunction has resulted in widespread disregard by certain tenants of their obligation to pay rent, which, in turn, allegedly inhibited the landlord's ability to pay for desperately needed improvements in the development.

Insofar as relevant to this appeal, the landlord moved, inter alia, to modify so much of the preliminary injunction as enjoined the landlord from commencing proceedings to evict tenants so the landlord could take action against tenants who have withheld rent. In support of its motion, the landlord argued that tenants, aware of the landlord's inability to protect its rights in housing court, had run up rent arrears in the sum of $825,000 in less than one year. Furthermore, the landlord argued that the injunction had been issued as "an indictment" of the defendant Eshel Management (hereinafter Eshel), which had been responsible for "perceived abuses." However, on March 24, 2003, within weeks of the order granting the tenants' motion for a preliminary injunction, the landlord terminated Eshel's management contract. In light of these circumstances, the landlord asked that the court modify the injunction to enable it to seek legal recourse against non-paying tenants.

In opposition, the tenants charged that the landlord had supported its motion with "a massive amount of paper" which was "incomplete, inaccurate and misleading."

By order dated June 24, 2004, the Supreme Court denied the landlord's motion, crediting the tenants' arguments attacking the adequacy and accuracy of the landlord's evidence concerning rental arrears. We reverse insofar as appealed from.

Issues of fact clearly exist as to the extent of the arrears and the amounts due and owing. However, the record sufficiently demonstrates that appreciable arrears do exist and that the landlord is powerless to compel payment. We agree that the tenants demonstrated their entitlement to a preliminary injunction enjoining the harassing tactics that led to many evictions of

rent-stabilized tenants. However, that injunction was to serve as a shield for the tenants, not as a sword to avoid duly owed rent. It is apparent that some middle ground must be found.

This litigation will likely continue for some time during which tenants must be accountable for their rent. Concomitantly, the landlord persuasively asserts that the absence of a positive cash flow has inhibited its ability to make necessary repairs and improvements. Accordingly, we remit this matter to the Supreme Court for further proceedings at which the parties may adduce evidence as to the actual state of finances and arrears at the development, in an attempt to fashion a fair and equitable remedy that balances the rights and obligations of the tenants and the landlord, and for a new determination of the subject branch of the motion thereafter. Adams, J.P., Krausman, Spolzino and Lifson, JJ., concur.